JS-6

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

SANTA ANA DIVISION

| | |
|---|---|
| IN RE: MODERN ALLOYS INC., MAFAB, INC. RONALD B. GREY | CASE NO. SA CV-15-1429-MWF<br><br>ORDER DISMISSING RONALD B. GREY'S APPEAL FROM THE BANKRUPTCY COURT'S ORDER ON OBJECTION TO CLAIMS |

Before the Court is a bankruptcy appeal from the United States Bankruptcy Court (the Honorable Catherine Bauer, United States Bankruptcy Judge). Ronald B. Grey appeals from the bankruptcy court's Order on Objection to Claims, which issued on September 1, 2015 (the "Order"). (Notice of Appeal and Statement of Election at 2 (Docket No. 2)). On February 23, 2016, Grey submitted his Opening Brief. (Docket No. 15). On June 8, 2016, Appellee JPMorgan Chase Bank, N.A. ("Chase") submitted its Answer. (Docket No. 24). On July 13, 2016, Grey submitted his Reply. (Docket No. 27). The Court has reviewed the papers filed in this appeal and held a hearing on **September 12, 2016**.

The appeal is **DISMISSED** for lack of jurisdiction. During the pendency of the appeal, Gray dismissed the underlying adversary proceeding, which rendered the requested relief moot.

# I. BACKGROUND

## A. Petition for Bankruptcy

Grey filed an individual Chapter 11 petition for bankruptcy on June 20, 2013. (Case No. 8:13-bk-15309-CB) (*see* Appendix of Defendant-Appellee JPMorgan Chase Bank, N.A. ("Chase Appendix") (Docket No. 24-1 at 4). The bankruptcy court approved the joint administration of Grey's Chapter 11 case with those of his business entities Modern Alloys, Inc. and MAFAB, Inc. in September of that year. (*Id.* at 20). On September 23, 2013, Chase filed a proof of claim for $3,706,586.93 ("Claim No. 7") under an Adjustable Rate Note, executed by Grey and delivered to Washington Mutual Bank, FA ("WaMu"), in the original principal amount of $3,825,000. (*See* Appellant Ronald B. Grey's Appendix ("Grey Appendix") (Docket No. 14), Exh. 1). The loan was secured by a Deed of Trust and recorded against certain real property located in Laguna Beach, California. *Id.*

On November 22, 2013, Chase filed a proof of claim for $453,577.46 ("Claim No. 11") related to a WaMu Equity Plus Agreement and Disclosure, originally executed with a maximum credit limit of $450,000. *Id.* This appeal only deals with Claim No. 7; the bankruptcy court refused to sustain or allow Gray's objection to Claim No. 11 because Chase withdrew that Claim on July 30, 2015, a month before the bankruptcy court issued its Order. (Docket No. 14-18 at 28–31).

Although WaMu held the original notes, the Office of Thrift Supervision closed WaMu, and on September 25, 2008, the Federal Deposit Insurance Corporation ("FDIC") was appointed receiver. *Id.* In its proof of claim, Chase represented that it acquired possession of the two notes that day. *Id.*

Grey filed an Objection to Chase's claims, arguing among other things that there was no evidence to support Chase's asserted secured interest and no evidence to indicate that Chase was the owner and holder of the notes. (*See* Grey App., Exh. 3 (Docket No. 14-3)). Grey also challenged Chase's chain of title from WaMu.

2

(*Id.*). Chase opposed the Objection. (*See* Grey App., Exh. 6 (Docket No. 14-6)). Grey replied. (*See* Grey App., Exh. 7 (Docket No. 14-7)). Attached to Grey's reply was certain written discovery he served on Chase and a request that the bankruptcy court "set a status conference in sixty (60) to ninety (90) days" to allow for Chase's response to discovery, time to hear any potential motion to compel, and to schedule depositions. *Id.*

On June 10, 2015, the bankruptcy court held a hearing, at which it stayed all discovery. (Opening Br. 10). The bankruptcy court continued the hearing to allow Grey an opportunity to inspect the note in Chase's possession, to ensure it was the original. (Grey App., Exh. 11 (Docket No. 14-11)). On July 10, 2015, Chase provided Grey with a copy of the front and back of the note at issue in Claim No. 7 and offered to make an appointment for Grey to inspect the original note. (*Id.*). Grey did not respond. (*Id.*). As noted above, Chase withdrew Claim No. 11. (*Id.*).

On August 5, 2015, Grey filed an adversary complaint against Chase to determine the validity of the lien. (*Id.*). Grey also filed a supplemental reply with the bankruptcy court, arguing that an adversary proceeding would be a more appropriate forum for determining the validity of the claim. (*Id.*).

**B.     The Bankruptcy Court Hearings**

On August 12, 2015, the bankruptcy court held a hearing on the Claim and Objection. (*See generally* Grey App., Exh. 17 (Docket No. 14-17)). At the hearing, Grey questioned whether the FDIC had the authority to sell the notes at issue to Chase. (*Id.* at 691). In response to questioning by the bankruptcy court, Grey agreed that the loan had been made to him by WaMu, that WaMu had been taken over by the FDIC, and that he had never paid off the loan. (*Id.* at 693–94). Grey speculated, however, that WaMu may have securitized the loan before the FDIC took over. *Id.* Counsel for Chase advised the bankruptcy court that Chase was in possession of the note, and argued that under California law, if a note is endorsed in

3

blank (as Chase's note was), the possessor has the right to enforce the note. (*Id.* at 696). The bankruptcy court continued the hearing until August 18, 2015, to allow Chase to produce the note in the bankruptcy court. (*Id.* at 699).

On August 18, 2015, Chase produced what it had determined to be the original note for the bankruptcy court and parties to inspect. (*See* Grey App., Exh. 18 (Docket No. 14-18) at 705). Grey was also sworn in as a witness. (*Id.* at 728). He testified that he borrowed about $3.8 million from WaMu on about July 14, 2006, and that the signature on the original note "looked like" his signature. (*Id.* at 729–30). Chase's counsel asked Grey directly if he thought the note looked like a forgery; Grey responded only that it had been 10 years since he had signed it. (*Id.* at 730). The original note was never formally admitted into evidence.

At the end of the hearing, the bankruptcy court found that the signature on the note was Grey's and that Chase was in possession of the original note. (*Id.* at 731–32). The bankruptcy court therefore denied the claim objection. (*Id.*).

On August 19, Grey voluntarily dismissed his adversary case against Chase. (Chase App. at 23). On September 1, 2015, the bankruptcy court entered its Order, which stated that Chase's Claim No. 7 was allowed. (*See* Grey App., Exh. 15 (Docket No. 14-15) at 679). On September 3, 2016, Grey appealed. (*See* Grey App., Exh 16 (Docket No. 14-16) at 681). On January 7, 2016, the bankruptcy court dismissed Grey's Chapter 11 case along with the jointly administered case of Modern Alloy, Inc., under 11 U.S.C. § 1112. (*See* Chase App. at 26). No party appealed the dismissal. Indeed, in its Answer Chase indicates that Grey has subsequently sold the property securing Claim No. 7 and that the loan was repaid in its entirety. (*See* Answering Br. at 9 n.1).

## II. **JURISDICTION**

This Court has jurisdiction to review final orders of a bankruptcy court under 28 U.S.C. § 158(a)(1).

4

### III. DISCUSSION

Chase argues that, because the underlying bankruptcy proceeding has been dismissed, Grey's appeal fails to present a case or controversy under Article III of the Constitution, and is therefore moot. (Answering Br. at 10); *see also In re Ellis*, 523 B.R. 673, 677 (B.A.P. 9th Cir. 2014). Although there are strong reasons to believe that the bankruptcy court would be affirmed in any event — Chase's claim was prima facie valid and Grey's evidence to the contrary amounted to little more than speculation, *see Lundell v. Anchor Constr. Specialists, Inc. (In re Lundell)*, 223 F.3d 1035, 1039–40 (9th Cir. 2000) — the Court agrees with Chase. Because the Court can no longer grant Grey any effective relief, the appeal must be dismissed.

"The test for mootness of an appeal is whether the appellate court can give the appellant any effective relief in the event that it decides the matter on the merits in his favor. If it can grant such relief, the matter is not moot." *Motor Vehicle Cas. Co. v. Thorpe Insulation Co. (In re Thorpe Insulation Co.)*, 677 F.3d 869, 880 (9th Cir. 2012) (quoting *Felster Publ'g v. Burrell (In re Burrell)*, 415 F.3d 994, 998 (9th Cir. 2005)). "The party moving for dismissal on mootness grounds bears a heavy burden." *In re Mortgages Ltd.*, 771 F.3d 1211, 1214 (9th Cir. 2014) (quotation marks omitted).

"In a bankruptcy appeal, when the underlying bankruptcy case is dismissed and that dismissal is allowed to become final, there is likely no longer any case or controversy 'with respect to issues directly involving the reorganization of the estate.'" *In re Castaic Partners II, LLC*, 823 F.3d 966, 969 (9th Cir. 2016) (quoting *Olive St. Inv., Inc. v. Howard Sav. Bank*, 972 F.2d 214, 215 (8th Cir. 1992)). "In the bankruptcy context the determination of whether a case becomes moot on the dismissal of the bankruptcy hinges on the question of how closely the issue in the case is connected to the underlying bankruptcy." *In re Universal Farming Indus.*, 873 F.2d 1334, 1335 (9th Cir. 1989).

1       In *In re Castiac*, the bankruptcy court granted the creditor relief from an
2  automatic stay, allowing the debtor to move forward with scheduled foreclosure
3  proceedings. *Id.* at 968.  The debtor appealed to the district court, but while that
4  appeal was pending, the bankruptcy court dismissed the underlying case. *Id.* The
5  debtor did not appeal the case's dismissal and the district court concluded that the
6  appeal was moot. *Id.*  The Ninth Circuit affirmed.  The court noted that once a
7  bankruptcy proceeding has been dismissed under 11 U.S.C. § 1112, and no party
8  appeals, the dismissal becomes final. *Id.* (citing Federal Rule of Bankruptcy
9  Procedure 8002(a)(1)).  At that point, even if the Ninth Circuit had reversed and
10 remanded, the bankruptcy court would have had no power to order a stay or to
11 award damages based on that stay's violation. *Id.*  Because the court had "no power
12 to restore the bankruptcy proceeding" absent an appeal from the dismissal order, the
13 appeal was moot. *Id.*

14      *In re Castiac* controls, here.  As in that case, the underlying bankruptcy case
15 was dismissed while this appeal was pending.  The Court notes that Grey does not
16 argue that he proved the note at issue was a forgery, but only that he was denied "his
17 right to conduct discovery and to an evidentiary hearing, especially."  (Opening Br.
18 at 16).  These issues are simply too connected to the underlying bankruptcy to
19 survive the dismissal of the underlying case.  *Cf.* In re Universal Farming, 873 F.2d
20 at 1335 (noting that "compensation for services rendered in connection with the
21 bankruptcy" is an example of an issue ancillary to the bankruptcy case).  Even if
22 Grey were to convince the court that the bankruptcy court's findings of fact were
23 clearly erroneous, or that the denial of an evidentiary hearing and further discovery
24 was an abuse of discretion, there would be nothing for the bankruptcy court to do on
25 remand because the case has been dismissed.  The bankruptcy court no longer has
26 jurisdiction to require further discovery and a full evidentiary hearing.  Moreover,
27 the property securing Chase's note has already been sold, and the loan repaid.  To
28

simply remand for payment of Claim No. 7 to the bankruptcy estate, as counsel suggested at the hearing, would be to award Grey a windfall not supported under the procedural posture of the case. This Court can no longer provide Grey effective relief, and therefore the Court lacks jurisdiction to entertain his appeal.

Grey argues that his appeal is not moot under the collateral consequences exception to the mootness doctrine. Essentially, he argues that his appeal is not moot because, under "[t]he normal rules of res judicata and collateral estoppel" which "apply to the decisions of bankruptcy courts," the bankruptcy court's decision to allow Claim No. 7 will be final and binding on Grey in future litigation. (Reply Br. at 2 (quoting *Thompson v. Magnolia Petroleum Co.*, 309 U.S. 478, 481 (1940). However, Grey "may not invoke as an exception to the mootness doctrine the specter of continuing legal harm from res judicata or collateral estoppel arising from his mooted claims when such harm is merely hypothetical and speculative." *In re Burrell*, 415 F.3d 994, 999 (9th Cir. 2005). Like the litigant in *In re Burrell*, Grey "cites no collateral continuing legal disputes to which the mooted claim has given rise," or in which he would be prejudiced by the bankruptcy court's ruling. *Id.* (quoting *Koppers Indus., Inc. v. U.S. EPA*, 902 F.2d 756, 758 (9th Cir.1990)) (internal alterations omitted). Indeed, he voluntarily dismissed the most likely candidate for such harm — his adversary proceeding against Chase. "Because [Grey] has not shown that 'there is a substantial controversy, between parties having adverse legal interests, of *sufficient immediacy and reality* . . . ' his request for relief does not qualify for the collateral consequences exception to the mootness doctrine." *Id.* (quoting *Super Tire Eng'g Co. v. McCorkle*, 416 U.S. 115, 122 (1974)).

## IV.   CONCLUSION

Accordingly, the appeal is **DISMISSED** as moot.

Dated: 09/13/16

United States District Judge